IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANDY WILLIAMS,
    Petitioner,

v.                                         Case No.  3:09cv275/LC/CJK

KENNETH S. TUCKER,[1]
    Respondent.
_____

ORDER and
REPORT AND RECOMMENDATION

    Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 28).  Petitioner replied.  (Doc. 32).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of the issue raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

    On October 30, 2000, petitioner was charged in Walton County Circuit Court Case No. 00-CF-595, with selling, manufacturing, delivering or possessing with

---

[1]Kenneth S. Tucker succeeded Walter A. McNeil as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

intent to sell, manufacture or deliver cocaine (Count 1), and possessing cocaine (Count 2). (Doc. 28, Ex. C, p. 11).[2] Petitioner was found guilty by jury verdict of Count 1. (Ex. C, p. 50; Ex. E, pp. 97-98; Ex. I, Amended Judgment at p. 3). Count 2 was nolle prossed. (Ex. I, Amended Judgment at p. 3). Petitioner was sentenced on Count 1 to 13 years imprisonment. (*Id.*, p. 6). An Amended Judgment was rendered on August 5, 2002. (Ex. I). The Florida First District Court of Appeal ("First DCA") per curiam affirmed petitioner's conviction and sentence on March 27, 2003, citing *State v. Delva*, 575 So. 2d 643 (Fla. 1991). *Williams v. State*, 840 So. 2d 1140 (Fla. 1st DCA 2003) (Table) (copy at Ex. M).

On February 29, 2004, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he subsequently amended and supplemented. (Ex. O, pp. 1-44, 58-78, 87-96, 100-03). On September 6, 2005, the Rule 3.850 court summarily denied some of petitioner's claims. (*Id.*, pp. 104-14). The Rule 3.850 court held an evidentiary hearing on the remaining claims and, on March 7, 2008, denied the remaining claims. (*Id.*, pp. 203-436). The First DCA per curiam affirmed without written opinion on March 16, 2009. *Williams v. State*, 7 So. 3d 540 (Fla. 1st DCA 2009) (Table) (copy at Ex. T). The mandate issued May 20, 2009. (Ex. U).

While petitioner's Rule 3.850 proceeding was pending, petitioner filed a Petition Alleging Ineffective Appellate Counsel with the First DCA. (Ex. X). The First DCA per curiam denied the petition on the merits on February 10, 2005. *Williams v. State*, 894 So. 2d 1068 (Fla. 1st DCA 2005) (Table) (copy at Ex. AA).

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 28, unless otherwise noted.

On June 1, 2009, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). (Ex. BB). On June 17, 2009, the trial court granted in part and denied in part petitioner's motion, and entered a corrected judgment granting petitioner 209 days credit for time served in jail prior to sentencing. (Ex. CC). Petitioner did not appeal.

Petitioner filed his federal habeas petition in this Court on June 21, 2009. (Doc. 1, p. 6). The parties agree that the petition appears timely. (Doc. 28, p. 6). The petition raises one ground for relief: trial counsel was ineffective for failing to ensure that the court reporter transcribed the audio portions of a videotape played at trial. Petitioner asserts that he attempted to exhaust this claim by raising it in his Rule 3.850 proceeding, but the state courts "overlooked" it. (Doc. 32, p. 3). Specifically, the Rule 3.850 trial court failed to rule on it and when petitioner appealed the denial of relief, the First DCA declined to consider the claim because the State argued it was a "new claim" not raised below. (*Id.*). Respondent asserts that petitioner is not entitled to federal habeas relief, because the claim is without merit. (Doc. 28, pp. 6-12).

## STANDARD OF REVIEW

Petitioner raised the issue of trial counsel's failure to ensure transcription of the audio portion of the videotape in his Rule 3.850 proceeding as a supplement to Issue I, Claim 4 of his second amended Rule 3.850 motion. (*See* Ex. O, pp. 87-92). The Rule 3.850 court did not expressly address this particular issue in its orders denying relief, although it specifically addressed other aspects of petitioner's challenge to trial counsel's performance with regard to the videotape. When petitioner raised the transcription issue in his Rule 3.850 appeal, the State argued that the issue should not

be addressed, because petitioner was attempting to raise a "new claim" that was not raised below. (Ex. R, p. 12) ("In this appeal, Appellant brings forth a new claim for ineffective assistance of counsel for the first time. He claims that his trial counsel was ineffective for failing to ensure the court reporter transcribed the audio portion of the videotape when it was played in court. Because this argument was not presented in his Rule 3.850 motion or it's [sic] supplements or amendments, and it was not addressed by the trial court, it cannot be addressed by this Court.").

Respondent states in his Answer that he "asserts all available procedural bars," but does not argue a procedural default defense. (Doc. 28, p. 6). Respondent also sets forth the deferential standard of review provided in 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19, and asserts that the deferential standard applies because the petition was filed after AEDPA's effective date, but does not address whether the state court adjudicated petitioner's claim on the merits. (Doc. 28, pp. 5-6). Respondent does not analyze petitioner's claim or the state court's decision under the deferential framework, but instead explains why petitioner fails to establish a constitutional violation. (*Id*., pp. 6-11).

The Court need not decide whether AEDPA deference applies, because even giving petitioner the benefit of *de novo* review of his claim, the record demonstrates that petitioner is not "in custody in violation of the Constitution," 28 U.S.C. § 2254(a), and is not entitled to federal habeas relief. *See Berghuis v. Thompkins*, — U.S. —, 130 S. Ct.2250, 2265, 176 L. Ed. 2d 1098 (2010) ("Courts cannot grant writs of habeas corpus under § 2254 by engaging only in *de novo* review when it is unclear whether AEDPA deference applies, § 2254(d). In those situations, courts

must resolve whether AEDPA deference applies, because if it does, a habeas petitioner may not be entitled to a writ of habeas corpus under § 2254(d). Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, *see* § 2254(a).").

## ANALYSIS

A.   State Court Record

At trial, the State presented evidence in the form of a videotape to demonstrate that petitioner had in fact participated in the sale of cocaine as a principal. (Ex. E, pp. 22-23). The videotape featured interaction between petitioner, Jackie Thomas (petitioner's co-defendant) and Wendy Strange (a confidential informant), where the exchange of money for drugs took place. (*Id*.). The State also admitted into evidence the drugs that were purchased by Ms. Strange as well as the drug paraphernalia that she carried. (*Id*., pp. 23, 77).

In addition to the videotape, the State presented the testimony of Investigator Lonnie Pippins. Investigator Pippins testified that on September 4, 2000, he instructed Ms. Strange, the CI, to travel to an area on North Davis Lane and Andrews Avenue to purchase drugs. (*Id*., pp. 20-21). Investigator Pippins provided Ms. Strange with money and drug paraphernalia to be used during the drug purchase. (*Id*., pp. 20, 24). Pippins was able to hear the sale take place because he provided Ms. Strange with an audio device. (*Id*.,p. 21). Pippins also provided Ms. Strange with a camera to record the sale on videotape. (*Id*., pp. 20, 22). When Ms. Strange returned to Investigator Pippins after the sale, she gave the drugs that she had

purchased to Investigator Pippins. (*Id*., pp. 22-23). Pippins testified that the drugs were tested and verified as cocaine. (*Id*., p. 23).

Wendy Strange testified at trial. Ms. Strange confirmed that she was working for Investigator Pippins as a CI. Ms. Strange testified that on September 4, 2000, Pippins installed surveillance equipment in her truck, and that a video was made of her undercover buy of cocaine from petitioner. (*Id*., pp. 34-35). During Ms. Strange's testimony, the State played the videotape, which included audio, and intermittently paused the tape to enable Ms. Strange to explain or clarify what was being said and done. Ms. Strange identified petitioner in the video, and explained that she asked petitioner for a $20.00 piece of crack cocaine. (*Id*., p. 38). Petitioner responded that he would have to get a forty. (*Id*.). Ms. Strange affirmed that petitioner asked her to show him a stem (drug paraphernalia) and that she showed him a drug pipe sitting next to her on the seat of her truck. The State introduced the stem into evidence, and Ms. Strange identified it as the one she showed petitioner. (*Id*., pp. 38-39). Ms. Strange testified that she made the payment and then petitioner "gave me the crack in my hand." (*Id*., p. 39). When asked to confirm who she got the crack cocaine from (petitioner or the man with petitioner, co-defendant Jackie Thomas), Ms. Strange testified, "Mr. Williams handed me the crack." (*Id*., p. 39). On cross-examination, Ms. Strange again confirmed: "Q: It's your testimony that Andy Williams handed you the crack? A: Yes, he handed me the crack." (*Id*., p. 52). After petitioner handed Ms. Strange the crack, petitioner's co-defendant Mr. Thomas gave petitioner a piece of crack for making the sale. (*Id*., pp. 39, 52). After the transaction, as Ms. Strange was starting to pull away, petitioner asked Ms. Strange if he and she could smoke together the crack she had just purchased. (*Id*., pp. 39-40).

Ms. Strange declined, drove off, returned to Investigator Pippins and gave Pippins the drugs she bought from petitioner. (*Id*., p. 40). The videotape was played during direct and cross examination of Ms. Strange.

At the close of the State's case, defense counsel moved for judgment of acquittal, arguing that the evidence showed a transaction between Ms. Strange and Mr. Thomas, but did not show a sale of drugs between petitioner and Ms. Strange. (*Id*., p. 56). The trial judge found there was sufficient evidence, based on the tape and Ms. Strange's testimony, to send the case to the jury. (*Id*.).

Petitioner testified on his own behalf. Petitioner asserted that he was not involved in the drug sale. (*Id*., p. 60). Petitioner stated that his only involvement was locating Jackie Thomas, who petitioner claimed was the person who sold the drugs to Ms. Strange. (*Id*., pp. 60, 64). Petitioner testified that during the videotaped transaction he was merely conversing with Ms. Strange about the possibility of the two of them getting together in the future to have sex. (*Id*., pp. 62-64). Petitioner claimed that his romantic interest in Ms. Strange was the reason for his presence at the scene during the incident. (*Id*.). Petitioner testified that the item Jackie Thomas handed to him was a lighter, not crack cocaine. (*Id*., p. 62). The videotape was played during direct and cross examination of petitioner. After the verdict, the defense renewed its motion for judgment of acquittal, which the court denied. (*Id*., p. 101).

Petitioner argues that the case came down to a "credibility contest" between Ms. Strange and himself, with Ms. Strange testifying to her "interpretation of what was said and who said it" to support the State's case that petitioner was a knowing participant in the drug transaction, and petitioner testifying to a "diametrically

opposed" version that he was merely "attempting to 'hook up' with the CI on a sexual nature," and neither knew of, nor participated in the drug transaction. (Doc. 1, p. 4 and Attach. at p. 3; *see also* Doc. 32). Petitioner asserts:

> The court reporter's failure to transcribe this critical audio evidence as heard by the jury eliminates critical time stamping of the record to show exactly what portion of the tape is being played, what exactly is being said and by whom it is being said. To provide the foundation of an argument for judgment of acquittal the record must clearly show that, as in this case, the verdict is contrary to the evidence adduced at trial. Defense counsel's failure to insure that the court reporter's transcript of the trial proceedings accurately reflected all the testimony and evidence presented during the proceedings fails to provide a complete and accurate record on appeal. These critical omissions from the record deny the defendant the assistance of competent and effective counsel under the Sixth Amendment and hamstrung any opportunity for relief under appellate review by an incomplete record on appeal. . . . But for counsel's unprofessional error in failing to insure the court reporter accurately and completely transcribed all testimony and evidence presented, there is a reasonable probability that the outcome of the proceedings would have been different, . . . this includes both trial and appeal.

(Doc. 1, Attach. at pp. 4-5). Petitioner concludes: "If the tape had been transcribed as it should have, there is a reasonable probability that the sufficiency of evidence could have been successfully challenged in the trial court or upon review in the this [sic] Court a reversal would have resulted." (Doc. 32, p. 6).

    B.    Law Governing Ineffective Assistance Claims

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 1449 n. 14, 25 L. Ed. 2d 763 (1970) (recognizing that "the right to counsel is the right to the effective assistance of counsel."); *Strickland v. Washington*, 466 U.S.

668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984).  Ineffective assistance claims are governed by the United States Supreme Court's opinion in *Strickland v. Washington, supra*.  *Strickland* held that a successful claim of ineffective assistance requires a defendant to show both deficient performance by counsel and prejudice resulting from that deficiency  *Id*. at 687, 104 S. Ct. 2052.

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  Courts must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also e.g., Chandler* at 1314 (explaining that the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*., at 694, 104 S. Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

### C. Petitioner Fails to Meet The *Strickland* Standard

Petitioner has not shown that he was prejudiced by trial counsel's failure to ensure transcription of the audio portion of the videotape. The videotape was admitted into evidence, played in its entirety at trial, and re-played a number of times. The jury and the trial judge saw the videotape and heard the audio portion while the tape was being played. The judge had a complete record of the evidence when ruling on petitioner's original and renewed motions for judgment of acquittal. Petitioner has not shown that a court reporter's transcription of the audio portion of the tape would have provided the trial judge with a better record of "what exactly is being said and by whom it is being said" than the tape itself, supplemented by the parties' testimony. Petitioner fails to establish a reasonable probability that the outcome of his trial would have been different had the audio portion of the videotape been transcribed.

Petitioner further argues that the lack of transcription resulted in an incomplete record for appellate review. The record belies this assertion. The videotape was included in the record on petitioner's direct appeal. (*See* Ex. X, Petition Alleging Ineffective Assistance of Appellate Counsel which includes an attached Exhibit H consisting of appellate counsel's Motion to Supplement the Record with a copy of the videotape, the First DCA's order granting the Motion to Supplement the Record, and appellate counsel's Supplemental Directions to the Clerk to prepare and forward the videotape to the appellate court; *see also* Ex. O, pp. 260-64 which includes documentation of the trial court's release and transfer of the videotape to the appellate court). The state appellate court had the most reliable evidence of the audio portion of the videotape – the audio itself. The appellate court was able to examine the audio portion of the videotape by playing it, which is exactly how the jury and trial judge

heard the audio portion of the videotape. There was no deficiency or incompleteness in the record on appeal. Petitioner fails to establish that the lack of a transcript "caused prejudicial impact on the appellant by compromising the appellate process to such a degree as to undermine confidence in the fairness and correctness of the outcome." *Johnson v. Wainwright*, 463 So.2d 207, 209 (Fla. 1985) (citing *Strickland*, 466 U.S. 668). Thus, petitioner is not entitled to relief on his ineffective assistance claim.

Petitioner relies on *Jackson v. State*, 723 So.2d 319 (Fla. 2d DCA 1998), to support his argument that omission of the transcript constitutes grounds for reversal of his conviction. (Doc. 1, Attach. at p. 4). *Jackson* supports the opposite conclusion. In *Jackson*, the State introduced the taped statement of one of Mr. Jackson's co-defendants into evidence. The tape was played to the jury. The trial court instructed the court reporter that she did not need to transcribe the tape. *Id*. at 319. After Mr. Jackson objected to certain statements in the tape, the tape was again played for the jury with the challenged statements redacted. On direct appeal, Mr. Jackson supplemented the record with a transcript of the redacted tape, but was unable to provide the appellate court with a copy of the tape as it was originally played to the jury. The appellate court said:

> The trial court's instruction that the tape not be transcribed saved neither money nor labor, and it made it extremely difficult for this court to engage in intelligent review of the record. Appellant argues that we should reverse his convictions on this very basis. In a different situation, the fact that the trial court prevented a defendant from providing a complete transcript of all the evidence presented to the jury may require reversal. However, in this case, as noted, appellant challenged the redacted portions of the tape on *Bruton* grounds and such a violation is subject to a harmless error analysis. Appellant's own

> statements, introduced into evidence during the State's case, placed him at the scene and a friend testified that he told her he had raped the victim with a plunger.

*Id*. at 320 (citations omitted).

Here, petitioner was able to and did provide the appellate court with a complete record of the evidence presented to the jury – the actual videotape as it was played to the jury. The appellate court was able to engage in intelligent review of the record. Petitioner fails to show that the lack of a transcript rendered his direct appeal record incomplete or insufficient for meaningful appellate review. *See Lawrence v. State*, 632 So.2d 1099 (Fla. 1st DCA 1994) (holding that court reporter was obligated to transcribe tapes played during trial, but noting that tape itself was best evidence); *Chavers v. State*, 775 So.2d 328 (Fla. 2d DCA 2000) (citing *Jackson* for the proposition that failure to transcribe a tape played to a jury could require reversal depending on the circumstances of the case, but affirming conviction because the appellate record was supplemented with the tape itself).

## CONCLUSION

Giving petitioner the benefit of all doubt and reviewing his claim *de novo*, the standard most favorable to him, the record establishes that trial counsel's failure to ensure transcription of the audio portion of the videotape did not prejudice petitioner at trial or on appeal. Petitioner has not shown that he "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), and he is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Andy Williams* in the Circuit Court for Walton County, Florida, Case No. 00-CF-595 be DENIED, and the clerk be directed to close the file.

*Case No: 3:09cv275/LC/CJK*

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 27th day of February, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).